Complainants are partners engaged in the retail sale of furniture and household goods, occupying for their business a store known as 178 Spring Street in the Town of Newton, *Page 587 
the store being in a building owned by defendant Gelber. Their occupancy of 178 Spring Street started by virtue of a written lease for that store from Gelber for two years expiring April 30th, 1944, with the privilege of renewal for two more years to expire April 30th, 1946. They seek by their bill filed April 2d 1946, to compel Gelber to specifically perform an oral agreement which they claim he made with them in March, 1944, to give complainants a lease for the term of five years at a rental of $220 per month for the store complainants were then occupying and the adjoining store then occupied by one Rosselli in the same building.
Gelber pleads our statute of frauds (R.S. 25:1-5) as a defense. Under that statute an agreement to make a lease is a contract relating to and concerning an interest in lands and the statute requires that such an agreement must be in writing and signed by the party to be charged therewith, otherwise the agreement cannot be enforced. Cooper v. Aiello,93 N.J. Law 336; Tansey v. Belleville Relief Association, 99 N.J. Eq. 894.
But the complainants contend that a court of equity will not recognize the statute as a bar to enforcing an oral agreement of this nature when it is being used for the purpose of shielding, protecting or aiding Gelber in the perpetration of a fraud against them. They contend that Gelber's determination not to abide by his agreement arose some months after the agreement was made; that having made the agreement it was his duty to reach a determination not to perform it and to so inform complainants sufficiently early to enable them to make other arrangements for housing their business but that from March, 1944, to October, 1945, Gelber remained silent and permitted complainants to believe that he intended to carry out his agreement; that Gelber's purpose in remaining silent was that after making the promise to complainants he formed the intention to set up his son-in-law Bisker in the premises here in question in the same kind of business as complainants were conducting and that Gelber knew that complainants would rely on the agreement they claim he had made with them and would not take measures until too late to find another place to which to move their business, his purpose being to give to *Page 588 
his son-in-law the benefit of occupancy of complainants' place of business and also the benefit of absence of competition by complainants in Newton.
Complainants prove that they have been in business in Newton since 1937, first as a corporation and thereafter as a partnership; that they have established a business which amounts to approximately $50,000 gross annually; that Spring Street is the main and virtually the only business street in Newton and they endeavor to show that until about the middle of February, 1945, other stores in that street were available from time to time for complainants' business purposes; that relying on Gelber's promise they did nothing toward securing another store large enough to accommodate their business, until August, 1945, when they became suspicious of Gelber's intentions and they then found that no store could be had. But the proofs show that on December 30th, 1944, complainants secured a lease of 179 Spring Street, a store directly across the street from their present place of business, for two years with the right of renewal for three more years, and that the 179 Spring Street store is 25 feet wide in front (less a stairway 3 1/2 feet wide which takes up part of the front) by 80 feet deep, while 178 Spring Street is 28 feet wide in front by 55 feet deep. Complainants are presently using the store at 179 Spring Street as a warehouse while, under a restraining order issued in this cause, they continue to occupy 178 Spring Street.
Gelber denies agreeing with complainants to make the lease for which they contend and the evidence satisfies me that it was not until September, 1945, that he considered aiding his son-in-law to engage in business in Newton. October 11th, 1945, Gelber served complainants with notice to quit and surrender possession of 178 Spring Street April 30th, 1946, and on October 13th, 1945, he gave a written lease for five years to his son-in-law and Levin for his entire building, which lease was to commence May 1st, 1946.
Complainants do not claim that when Gelber made the alleged oral agreement with them he did not intend to keep it. Even if Gelber had made the oral agreement as complainants contend, and thereafter reached a determination *Page 589 
that he would not perform it, such act on his part would not constitute such fraud as would overcome the direct provisions of the statute of frauds. He might be charged with being guilty of a dishonorable act or of committing a moral wrong in refusing to be bound by an oral promise but since the promise was not made with any then present intention of deception, it cannot be said to be a fraud within the legal meaning of that term, to refuse to be bound by a promise which the statute of frauds states shall have no legal effect (Radey v. Parr, 108 N.J. Eq. 27; Droutman v.E.M. L. Garage, Inc., 129 N.J. Eq. 1; affirmed, 129 N.J. Eq. 545) and because the promise was invalid and unenforceable Gelber was under no obligation or duty to speak, if having made the promise he changed his mind. Complainants claim they asked Gelber to give them some written evidence of his agreement and that he said his word was sufficient but they do not claim that it was his intention to trick them into not insisting on a writing. They are presumed to have known the law and if Gelber made the promise and complainants failed to obtain that promise in writing but chose to rely on Gelber's honor or word and rest on the parol agreement, they must take the consequences. In any event Gelber having pleaded the statute of frauds is entitled to its benefit as against validity of the oral agreement asserted by complainants. Van Dyne v. Freeland, 11 N.J. Eq. 370-378; same case, 12 N.J. Eq. 142-150; Brown v. Brown, 33 N.J. Eq. 650-661; Ziegener Lane v. Daeche, 91 N.J. Law 634.
Besides my conclusion that the statute of frauds bars complainants from the relief of specific performance of the alleged agreement, there are other reasons why such relief should not be granted.
Specific performance of a contract will not be granted when its existence and terms are not clearly proved to the satisfaction of the court. Brown v. Brown, supra; Potter v. Hollister,45 N.J. Eq. 508; affirmed, 46 N.J. Eq. 609; Lawrence v. Springer,49 N.J. Eq. 289; Cohen v. Pool, 84 N.J. Eq. 77; affirmed,84 N.J. Eq. 189; Rabinowitz v. Rooney, 97 N.J. Eq. 49; affirmed on this point, 101 N.J. Eq. 772; Turkington v. Zuber, 100 N.J. Eq. 285. *Page 590 
The situation in March, 1944, when Gelber allegedly gave his oral promise to make a lease to complainants of the store complainants were then occupying and the adjoining store then in possession of Rosselli as Gelber's tenant, was that complainants had already exercised their right to renew to April 30th, 1946, the lease covering their store and Rosselli was assumed to be a month-to-month tenant in his occupancy of the adjoining store.
Complainants' story is that in March, 1944, after they had given Gelber notice of their intention to renew their lease, they had a meeting with him at which they stated their desire to rent Rosselli's store in addition to the store they then occupied and Gelber agreed, with the proviso that another store should be secured for Rosselli; that complainants secured a lease in their own names dated April 5th, 1944, of 179 Spring Street for six months, wherein was included a provision for occupancy thereof by Rosselli if he desired it, the total rent being $300 of which Gelber contributed half; that Gelber's agreement was to lease 178 Spring Street and Rosselli's store to complainants when Rosselli moved out and necessary alterations were completed by Gelber to throw the two stores into one, for the term of five years at $220 per month, no other terms or conditions being discussed and that the lease under which complainants were in possession of 178 Spring Street was to be canceled; that after Rosselli had moved and the alterations had been completed, Gelber was to have a written lease prepared and given to complainants.
Gelber flatly denies making any new agreement of lease with complainants. He admits a meeting with them at which they told him of their desire for a lease of the two stores and he testified that he told them he could not discuss the subject with them so long as Rosselli was in occupancy of his store and that he did not wish to make any lease which would run longer than the two-year term to which complainants were then entitled; that he was willing to and did contribute half of the rent for six months of 179 Spring Street because he believed if he could get Rosselli out of the store then occupied by Rosselli, he could obtain more rent for it. His testimony shows that Rosselli refused to move from his store, that at *Page 591 
the final hearing of this cause he was still in possession thereof and that after the instant suit had been begun he brought dispossess proceedings against Rosselli in a District Court wherein a jury decided Rosselli was a holdover and entitled to finish out the year; that a second dispossess suit was started against Rosselli in the District Court and removed to the Circuit Court, where it is now awaiting trial.
It does not seem probable, when Rosselli was in possession of his store and no one could be certain he would be willing or could be compelled to vacate it, that Gelber would have made or complainants could have understood that Gelber was making a definite promise to rent that store to complainants. But if Gelber had agreed to give the lease for which complainants contend and it had been possible for him at any time thereafter to deliver possession to complainants of the entire premises agreed to be leased, when should the term of five years start? The fact that complainants rented 179 Spring Street for six months from April, 1944, for Rosselli's benefit, indicates that complainants hoped to obtain a lease from Gelber which would commence at some date between April and October, 1944. How can this court, two years later, and even if Gelber were now in position to deliver possession of the Rosselli store to complainants, fix a date from which a five-year term should start, direct how rent should be adjusted and feel sure of doing equity as between the parties?
The complainants point to the lease they secured for 179 Spring Street in April, 1944, and payment by them of one-half of the rent thereunder, as part performance by them of the agreement for lease which they contend Gelber made with them, sufficient to take the agreement out of the operation of the statute of frauds. To support that contention it is necessary that they should first establish by convincing proof that Gelber actually made an agreement to make the lease for which complainants contend and second that the act on which they rely as part performance was exclusively referable to that agreement. Cooper v. Colson,66 N.J. Eq. 328; Weyer v. Weyer, 106 N.J. Eq. 112; affirmed,107 N.J. Eq. 593. I have no doubt that complainants were desirous of securing *Page 592 
such a lease from Gelber and had discussed the subject with him. I also have no doubt that complainants understood they could not have a lease of Rosselli's store unless and until Rosselli vacated it and therefore they were willing to risk the expenditure of $150 for a lease for a store for Rosselli in the hope that Rosselli could be induced to move to such store, but the fact that complainants did secure such lease and paid part of the rent therefor was not because Gelber had actually agreed to enter into a lease with them but because they had the expectation that he would so agree after Rosselli had moved. The lease for 179 Spring Street was a distinct transaction wholly apart from the agreement for a lease which complainants hoped subsequently to induce Gelber to enter into.
Since a lease was to be prepared by Gelber it is fair to assume that it would consist of more than the few lines necessary merely to state the parties and a term and amount of rent, but complainants say that no other terms were discussed which leaves it to inference that other terms, some at least similar to those contained in the written lease under which they held occupancy of 178 Spring Street, should be included in the written lease they expected Gelber to prepare and tender and that a provision would be included also for cancellation of complainants' lease which then had until April 30th, 1946, to run.
Because the testimony as to whether Gelber agreed to give a lease to complainants is conflicting and leaves me in doubt as to whether such an agreement was actually made and there is also doubt as to when the term of letting should commence and the further doubt as to what provisions, if any, beside the term and rent should be contained in such lease, I feel I should not decree specific performance of the oral agreement even if such a decree is not barred by the statute of frauds.
There is another reason why specific performance should not be decreed. Since Rosselli, under a claim of right, is still in possession of part of the premises for which complainants seek a lease, it would be idle to direct Gelber to execute a written lease to complainants for Rosselli's store because Gelber *Page 593 
is not in a position to place complainants in possession.Hopper v. Hopper, 16 N.J. Eq. 147; Public Service Corp. v.Hackensack Meadows Co., 72 N.J. Eq. 285; Flattau v. Logan,72 N.J. Eq. 338; Clark v. New Jersey Postal Telegraph Co., 82 N.J. Eq. 15; Berg v. Baldwin, 84 N.J. Eq. 90; affirmed, 84 N.J. Eq. 193; Klausner v. Watson, 86 N.J. Eq. 220; McAllister v.Atlantic City, 90 N.J. Eq. 357; Friedlander v. Lehr, 98 N.J. Eq. 359; Larson v. Kearney, 110 N.J. Eq. 561.
Levin and Bisker, on their application, were admitted as defendants herein. They are the lessees under a lease for a term to begin May 1st, 1946, from Gelber for the entire building in which are located 178 Spring Street and Rosselli's store. By their answer they allege that they entered into that lease believing that complainants' right of occupancy of 178 Spring Street would expire April 30th, 1946, and that they had no knowledge of complainants' claim that Gelber had agreed to lease the above mentioned two stores to them. By counter-claim they pray that Gelber and complainants be decreed to deliver possession to them of the premises covered by their lease. Since I have found that complainants are not entitled to the relief they seek against Gelber, I further find that defendants Levin and Bisker are entitled to the decree for which they pray and that such decree should direct complainants to surrender possession to said defendants of 178 Spring Street. *Page 594